{¶ 55} I respectfully dissent from the majority on assignment of error number one because I do not believe that the evidence presented at trial was sufficient for a conviction.
 {¶ 56} The majority relies on State v. Biggs, Franklin App. No. 01AP-1185, 2002-Ohio-4999. The facts in Biggs, however, are nothing like the facts in the case at bar. In Biggs, defendant was seen, first, attempting, to conceal a plastic baggie up her shirtsleeve and then, second, shoving that same baggie under her leg after the officer placed her on the ground. The baggie was found moments later.
 {¶ 57} In the case at bar, the majority believes that the officer "testified that he observed defendant receive an item from the first man and give the first man money." I disagree with this interpretation of the testimony. Specifically, the officer stated:
* * * I didn't see exactly what they passed. I saw money exchange hands but I didn't see what the first gentleman gave this gentleman.
Q. Whose hands did the money go from and to?
A. The money went from his hands to the first gentleman that parked behind me.
Q. Did you see anything come from the other, like the person in the car?
A. I couldn't. They were like 15, 20 feet away. I couldn't say what was passed. You can't tell. I've seen enough drug transactions or transactions I couldn't say exactly what the first gentleman had in his hand but I did see the money.
Tr. at 146-147. The officer never explicitly said that he saw defendant receive anything from the other gentleman who passed him on the street.
 {¶ 58} The officer further testified:
Q. Now during that whole exchange you never saw any actual piece of crack cocaine exchanged between the two of them, did you?
A. No.
Q. In fact, from where you were sitting, you never saw any crack cocaine while sitting in your truck over to where these two were, did you?
A. No.
Q. You never say my client drop a piece of crack cocaine to the ground, did you?
A. No.
Q. You never saw him with a piece of crack cocaine in his hand, did you?
A. No.
Q. You never saw the other gentleman with a piece of crack cocaine handing it to my client, did you?
A. No.
Tr. at 162-163. The state never presented any direct evidence that defendant possessed crack cocaine.
 {¶ 59} The majority, however, finds persuasive that "a rock of crack cocaine was recovered in this area minutes later, and defendant was in possession of a crack pipe." The officer and defendant both left the primary scene for a period of eight or nine minutes,[1] according to the officer, to look for another individual and returned to the place of the exchange of money whereupon the officer searched the ground for "something" with a flashlight because it "was starting to get dark." Only then did the officer find a cellophane packet on the ground in the vicinity of where defendant had been. The area where the cellophane packet was found was the sidewalk on 12th Street between Euclid and Chester Avenues, which contained "apartments and businesses." The area was in downtown Cleveland and was "part of the theater district." The officer testified further that in that location you see "a lot of the residents from the apartment buildings coming and going."
 {¶ 60} Because he had left the block, the officer could not continue to survey the scene. Moreover, there were a "moderate" number of "people on the sidewalk passing back and forth." Because of the lapse of time while the officers left the scene and because of the public nature of the area with people walking back forth, the bag that was found cannot be attributed to defendant beyond a reasonable doubt. Again, the comparison to Biggs fails because here the police did not recover the cellophane packet immediately after observing the exchange between defendant and the other gentleman.
 {¶ 61} Further, in Biggs, the defendant confessed to having purchased and smoked crack cocaine just prior to her arrest. In the case at bar, however, the verbal exchange between the officer and defendant was the complete opposite from the verbal exchange in Biggs. Here, the officer testified:
A. I approached this gentleman here and I said, "What did you get from him?
He said, "Nothing."
I said, "What are you doing here?"
He said, "I'm doing nothing" so I put him against the wall and patted him down.
Tr. at 148. This exchange contains no confession as that given in Biggs.
 {¶ 62} The majority also observes that defendant was in possession of a crack pipe. There was no evidence, however, of crack cocaine in the pipe found on defendant. The true bill of indictment states clearly that defendant is charged with having possession of "crack cocaine." The scientific technician testified, however, that the evidence taken from defendant's drug paraphernalia was cocaine, not crack cocaine. The cross-examination of the scientific examiner clarified the difference:
Q. What were the results of these tests?
A. The results of both of those tests were positive for cocaine.
Q. Now when you say it's positive for cocaine, I asked you if that was crack cocaine and you said that's what I would call it. What is the distinction?
A. Crack cocaine chemically is cocaine in the base form as opposed to the powder cocaine which is cocaine in the soft form. I described it as crack cocaine because it also can be used as a descriptive term and it's in the form that I would describe as being crack cocaine.
Q. Now in other words, crack cocaine is an object or chemical entity which is something that is different then [sic] cocaine, not crack cocaine, but just cocaine. There is a distinction between the two, correct?
A. There is a distinction between the cocaine. It's all cocaine, but crack cocaine is cocaine in the base form and powder cocaine is cocaine in the soft form.
Q. In your work as a lab technician when you test these objects, part of your work is to make distinctions between what is crack cocaine and what is just cocaine; is that correct?
A. That can be done.
Q. All right. You did that in this case, didn't you?
A. No. I just tested to see if it was cocaine.
* * *
Q. All right. So based on the description of the material you're making a distinction between crack cocaine and cocaine, correct?
A. Yes. Crack cocaine looks different then [sic] powder form.
Q. Because in fact they are two different entities, would you agree with that?
A. Yes, they're both cocaine but like I said one is the base form and the other is the soft form.
Q. You also tested this metal pipe there, is that correct?
A. That's correct.
Q. You did that by rinsing out some of the inside of that and testing what you had rinsed out of that, is that correct?
A. Yes.
Q. Can you describe to us how you did that?
A. I performed the same two tests. I just performed the test on the rinsed portion using a chemical solvent, and I performed the Scott's Test and the instrumental tests.
Q. What were the results of those tests?
A. The results were positive for cocaine.
Q. All right. Now so in other words, you're saying that the material you tested that was, that came outside, came from inside of that stem, that tested positive to be the chemical cocaine; correct?
A. Yes.
Q. However, that's material that was inside that pipe that did not turn out to be crack cocaine, would you agree with that?
A. I didn't perform any test to make that distinction.
Q. So in other words, what you're saying is you did not discover any crack cocaine within that pipe, correct?
A. I did not perform any test to make that distinction.
Q. Well, in other words, without performing tests to make thatdistinction you can't sit here and say you found crack cocaine withinthat pipe, correct?
A. Right.
Tr. at 178-181. Emphasis added.
 {¶ 63} "The constitutional right to be tried for the same offense for which one is indicted is one of our most fundamental constitutional rights of due process. The failure to include an essential element in an indictment does adversely affect said substantial right." State v.Pittman, Cuyahoga App. No. 68163, 1995 Ohio App. LEXIS 5115. "When the prosecuting attorney files a bill of particulars, the state is confined to the items therein set down. 14 R.C.L. 191. This rule applies to each count of the indictment." State v. Vitale, 96 Ohio App.3d 695; 645 N.E.2d 1277; 1994 Ohio App. LEXIS 3322.
 {¶ 64} Defendant was indicted for possession of crack cocaine, not cocaine. The scientific examiner testified to the presence only of cocaine and agreed that she could not say she found evidence of crack cocaine within his pipe. In fact, she testified that she did not perform any type of test to determine whether or not there was evidence of crack cocaine in the paraphernalia removed from defendant, although such tests exist.
 {¶ 65} The majority acknowledges that the evidence here is circumstantial. Possession of crack cocaine cannot be proved beyond a reasonable doubt, however, from evidence of a pipe in which no crack cocaine has been found. Nor can possession be attributed to someone simply because he was standing earlier on a public sidewalk where a bag of crack was later found.
 {¶ 66} I would, therefore, reverse the conviction.
[1] The officer stopped defendant, searched him, walked to Euclid Avenue, flagged down another car, in which defendant was deposited, and then drove around looking for the second male. The officer went to 14th
and 15th and Euclid and then drove back to 13th and Chester, where the other male was located, searched, and placed in the police car.